Sealed

FILED BY _____ D.C.

NOV 0 5 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO._____

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. MAI LINE, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> ACCELERATED INTERNATIONAL FORWARDERS; ACE RELOCATION SYSTEMS, INC.; ALLIED INTERNATIONAL NA, INC.; ATLAS WORLD GROUP INTERNATIONAL; CAROTRANS INTERNATIONAL, INC.; CHAMPION INTERNATIONAL MOVING; CONTINENTAL VAN LINES; ECONOCARIBE CONSOLIDATORS INC.; EFFORT ENTERPRISES OF INDIANA, INC.; GRIDIRON FORWARDING CO, INC.;  M&S LOGISTICS; OL USA LLC;  ROSE MARITIME CONTAINER LINE; SEA EXPRESS AMERICA CORPORATION; SEA SHIPPING LINE; SEE-SPED USA INC.; SHIPCO TRANSPORT INC.; STEVENS FORWARDERS; SUDDATH RELOCATION SERVICES; VANGUARD LOGISTICS; AND XPT LOGISTICS, <br><br> Defendants. | 21-23908-CV-GAYLES/TORRES <br><br> **FILED UNDER SEAL** <br><br> **DO NOT PUT ON PACER** |

## COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### DEMAND FOR JURY TRIAL

Plaintiff UNITED STATES OF AMERICA ("United States"), by and through Relator Maersk Line, Ltd., alleges as follows:

## I.     INTRODUCTION

1.      Relator Maersk Line, Ltd. brings this action on behalf of the United States to recover damages as a result of the submission by Defendants ACCELERATED INTERNATIONAL FORWARDERS; ACE RELOCATION SYSTEMS, INC.; ALLIED INTERNATIONAL NA, INC.; ATLAS WORLD GROUP INTERNATIONAL; CAROTRANS INTERNATIONAL, INC.; CHAMPION INTERNATIONAL MOVING; CONTINENTAL VAN LINES; ECONOCARIBE CONSOLIDATORS INC.; EFFORT ENTERPRISES OF INDIANA, INC.; GRIDIRON FORWARDING CO, INC.; M&S LOGISTICS; OL USA LLC; ROSE MARITIME CONTAINER LINE; SEA EXPRESS AMERICA CORPORATION; SEA SHIPPING LINE; SEE-SPED USA INC.; SHIPCO TRANSPORT INC.; STEVENS FORWARDERS; SUDDATH RELOCATION SERVICES; VANGUARD LOGISTICS; and XPT LOGISTICS (collectively "Defendants") of thousands of fraudulent bids, waiver submissions, and invoices to obtain shipping contracts through the United States Department of State ("DOS") under the supervision and guidance of the United States General Services Administration ("GSA").

2.      Many federal civilian offices pay for and assist their employees and families in relocating and moving their belongings through a GSA program—the Centralized Household Goods Traffic Management Program ("CHAMP"). Private shipping companies, referred to as "Transportation Service Providers" ("TSPs") participate in the CHAMP program and compete for shipping contract awards. In providing these shipping services, participants are subject to various strict guidelines and requirements that are overseen and set forth in DOS, GSA, and federal laws and regulations. One of the key requirements TSPs must follow is the "America-First" policy,

which is based on federal maritime and cargo laws. This policy requires that the companies use, and work with, "U.S.-flag vessels" (American shipping carriers), except in unique circumstances where a waiver is obtained for use of a "foreign-flag vessel." Cargo shipped through the CHAMP program ("relevant cargo" or "CHAMP cargo") is subject to these requirements.

3. Foreign-flag vessels are much cheaper than American carriers, and are not required to follow all U.S. laws and regulations. For example, U.S.-flag carriers are required to have U.S. Citizen crews and pay payroll taxes, and crew members pay U.S. income taxes. U.S.-flag carriers and vessels are also subject to strict U.S. Coast Guard regulations and standards.

4. This "America-First" policy has been in place for decades and is codified in multiple federal statutes, regulations, and guidelines.

5. With 225 embassies and consulates around the world, DOS uses this program thousands of times per year to relocate DOS employees by shipping their belongings both domestically and internationally.

6. Once a shipment is booked through the CHAMP program with a TSP, the TSP then either books the cargo on a vessel or contracts with Third-Party Logistics companies ("3PLs") to book the cargo on vessels. TSPs are the prime contractor with the United States and subcontract the cargo to 3PLs, who then book the cargo on carriers, when required to complete shipment.

7. Regardless of whether a TSP books the CHAMP cargo directly with a carrier or subcontracts with a 3PL to book the cargo on a carrier, the requirement to use a U.S.-flagged vessel applies.

8. From 2008 through the present, TSP and 3PL Defendants carried out a fraudulent scheme wherein hundreds of millions of dollars were illegally taken from taxpayers, American

workers, and American companies because foreign flag vessels were routinely and illegally used by the TSPs and 3PLs, instead of U.S.-flagged vessels.

9.      As part of the scheme, the U.S. Government was charged artificially high rates and the overcharges were retained by TSP and 3PL Defendants.

10.     The scheme was carried out through three false and fraudulent representations to the government: First, TSP Defendants submitted false and fraudulent low-ball bids in order to capture awards for the very competitive shipping routes, referred to as "lanes," across international waters.

11.     Second, in order to profit on their low-ball bids, TSP Defendants in coordination with 3PL Defendants submitted thousands of false foreign flag waivers, requesting permission to use lower costing foreign-flag vessels, by fraudulently certifying that no U.S.-flag vessels were available to carry-out shipments and/or that a foreign-flag vessel was necessary to meet delivery requirements.

12.     Third, after submitting false foreign-flag waivers and using lower-cost foreign-flag carriers, upon information and belief, TSP Defendants, enabled by 3PL Defendants, failed to equitably adjust the amounts charged to the U.S. Government and instead retained the overcharges.

13.     TSP Defendants knowingly submitted theses fraudulent waiver requests, counting on their awareness at the time that DOS did not have the resources to audit every waiver request. These waivers were routinely granted to TSP Defendants, resulting in hundreds of millions of dollars going to foreign companies instead of American companies.

14.     Once these fraudulent waiver requests were approved, TSP Defendants then either booked the cargo on foreign-flag vessels or subcontracted with 3PL Defendants, both of which

knowingly shipped the CHAMP cargo on foreign-flag vessels in violation of the applicable laws and regulations.

15.    Law-abiding American businesses, which federal law prioritizes, have been locked out of shipping lane contracts because of this fraudulent scheme. Likewise, law-abiding American carriers have been deprived of the opportunity to carry the cargo. Not only has the conduct violated the America-First policy, it also results in violation of numerous federal laws and guidelines as well as GSA contractual terms, policies, and waiver requirements.

16.    This fraudulent scheme continues to present day.

## II.    JURISDICTION AND VENUE

17.    This Court has jurisdiction over the claims raised in this Complaint under 31 U.S.C. § 3730(b) and 3732(a), which confer jurisdiction on this Court for actions brought under the federal False Claims Act and authorize nationwide service of process.

18.    Venue is proper under 31 U.S.C. § 3732(a), as Defendants transacted business and engaged in the conduct alleged in this District, where a key DOS dispatch agency is located. Further, Defendants arranged many of the shipments and provided documentation to DOS related to their services in this District.

## III.    PARTIES

### A.    Plaintiff

19.    Plaintiff in this action is the United States of America, by and through Relator Maersk Line, Ltd.

20.    Relator is a large U.S.-flag ocean common carrier that owns and operates U.S.-flag vessels and has direct and independent knowledge of the information on which these allegations are based. Relator voluntarily provided the information contained in this Complaint to the government in advance of this filing.

4

**B.**   **TSP Defendants**

21.     Accelerated International Forwarders ("Accelerated") is an Indiana corporation with a principal place of business in Fort Wayne, Indiana.  Accelerated is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

22.     Ace Relocation Systems ("Ace") is a Washington corporation with a principal place of business in Sumner, Washington. Ace is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

23.     Allied International NA, Inc. ("Allied") is a Delaware corporation with a principal place of business in Oakbrook Terrace, Illinois. Allied is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

24.     Champion International Moving ("Champion") is a Pennsylvania corporation with a principal place of business in Canonsburg, Pennsylvania. Champion is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

25.     Continental Van Lines ("Continental") is a Washington corporation with a principal place of business in Fife, Washington. Continental is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

26.     Effort Enterprises of Indiana, Inc. ("Effort") is an Indiana corporation with a principal place of business in Atlanta, Georgia. Effort is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

27.     Gridiron Forwarding Company Co., Inc. ("Gridiron") is a New Jersey corporation with a principal place of business in Brunswick, New Jersey. Gridiron is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

28.     Stevens Forwarders ("Stevens") is a Michigan corporation with a principal place of business in Saginaw, Michigan. Stevens is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

29.     Suddath Relocation Services ("Suddath") is a Florida corporation with a principal place of business in Jacksonville, Florida.  Suddath is a TSP that contracted through CHAMP to provide U.S.-flag shipping services to the U.S. Government.

### C.     3PL Defendants

30.     Atlas World Group International ("Atlas") is an Indiana corporation with a principal place of business in Evansville, Indiana. Atlas is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

31.     Carotrans International, Inc. ("Carotrans") is a Delaware corporation with a principal place of business in Clark, New Jersey. Carotrans is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

32.     Econocaribe Consolidators Inc. ("Econocaribe") is a Florida corporation with a principal place of business in Miami, Florida. Econocaribe is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

33.     M&S Logistics ("M&S") is a Louisiana corporation with a principal place of business in New Orleans, Louisiana. M&S is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

34.     OL USA LLC ("OL") is a Delaware corporation with a principal place of business in Westbury, New York. OL is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

35.    Rose Maritime Container Line ("Rose Container") is a Delaware corporation with a principal place of business of New York, New York. Rose Container is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

36.    Sea Express America Corporation ("Sea Express") is a North Carolina corporation with a principal place of business in Lincolnton, North Carolina. Sea Express is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

37.    Sea Shipping Line ("Sea Shipping") is a California corporation with a principal place of business in Oakland, California. Sea Shipping is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

38.    See-Sped USA Inc. ("See-Sped") is a New Jersey corporation with a principal place of business in Mercerville, New Jersey.  See-Sped is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

39.    Shipco Transport Inc. ("Shipco") is a New Jersey corporation with a principal place of business in Chatham, New Jersey.  Shipco is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

40.    Vanguard Logistics ("Vanguard") is a New Jersey corporation with a principal place of business in Brigantine, New Jersey. Vanguard is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

41.    XPT logistics ("XPT") is a Texas corporation with a principal place of business in Humble, Texas.  XPT is a 3PL that books cargo, including CHAMP cargo, on ocean carriers for trans-ocean shipment.

## IV.   BACKGROUND

### A.   The Merchant Marine Act of 1936, the Cargo Preference Act of 1954, and corresponding regulations

42.     Section 901(a) of the Merchant Marine Act of 1936 provides that whenever the personal effects (also known as Household Goods or "HHGs") of a government officer or employee are transported by sea, such HHGs must be transported on a U.S.-flag vessel unless the necessity of the mission requires the use of a foreign vessel. *See* 46 U.S.C. § 55302(a). The Merchant Marine Act of 1936 also provides the GSA authority to set forth regulations requiring agencies not to pay or reimburse an officer or employee for travel or transportation expenses associated with a foreign vessel, unless documentation indicates the necessity to do so. *See* 46 U.S.C. § 55302(b).

43.     The Cargo Preference Act of 1954, amended the Merchant Marine Act of 1936 to add Section 901(b), and requires that: "at least 50 percent of the gross tonnage of all Government generated cargo -- meaning cargoes procured, furnished, or financed by the United States Government -- shall be transported on privately owned, U.S.-flag commercial vessels to the extent such vessels are available at fair and reasonable rates. The 'at least 50 percent' requirement is applicable to the extent such vessels are available at fair and reasonable rates, as determined by the Maritime Administration." 46 USC § 55305; *See also* 46 C.F.R. Part 381.

44.     In 1956, Section 901(a) of the Merchant Marine Act of 1936 was further amended to provide that Government employees' personally owned vehicles ("POVs") are required to be transported on U.S.-flag vessels.  See 46 U.S.C. § 55303.

45.     The CHAMP Program includes cargoes that are subject to Section 901(a) of the Merchant Marine Act of 1936, and the Cargo Preference Act of 1954 pursuant to 46 C.F.R. Part 381.2(b)(1), and (4). The Cargo Preference Act of 1954 is applied to and administered by all

8

Federal departments and agencies (except the Department of Defense, with limited exception for certain Foreign Military Sales). *See* 46 C.F.R. Part 381.3; *see also* https://www.maritime.dot.gov/cargo-preference/military-cargoes/cargo-preference-laws-and-regulations. Each Department or Agency is responsible for ensuring compliance, including contractors and sub-contractors, to whom program requirements must be flowed down. *See id.* An effective measure to promote compliance is to include the appropriate cargo preference clauses in all program contracts and documentation. *Id.* Documentation on all government-impelled cargo moves must be reported to the Maritime Administration within 20 working days from date of loading on all shipments loaded inside the United States and 30 working days for shipments loaded outside the United States. *Id.* This reporting requirement applies to cargo moving on a foreign-flag OR U.S.-flag vessels. *Id.* Further, the Department of Transportation, Maritime Administration ("MARAD") division provides that this is done *"as a way to track and weed out potential violations."* *See* https://maritime.dot.gov/cargo-preference/military-cargoes/cargo-preference-laws-and-regulations (emphasis added)

46.     The Code of Federal Regulations clearly states that the preference for privately owned U.S.-flag vessels applies to contractors and subcontractors working with the U.S. government. *See* 48 C.F.R. Part 47.503(a)(1).

47.     The Department of State's Foreign Assistance Manual ("FAM") also makes it clear that Section 901(a) of the Merchant Marine Act of 1936, 46 U.S.C. §§ 55302-55303, and the Cargo Preference Act of 1954, 46 U.S.C. § 55305, apply to the transportation of State Department employee HHG and POVs. *See* 14 FAM 611.3 (defining the "Merchant Marine Act of 1936" to mean "A legal requirement under 46 U.S.C. 55302 and 55303 which establishes that all U.S. Government-financed transportation of vessel cargo be performed on U.S.-flag vessels unless such

9

service by foreign carriers is a matter of necessity[.]"); *see also* 14 FAM 611.4(a) ("In accordance with Section 901(a) of the Merchant Marine Act of 1936 (46 U.S.C. 55302 and 55303) any officer or employee of the United States Government traveling on official business abroad or to or from any of the territories or possessions of the United States must travel and transport his or her personal effects and privately owned vehicle (POV) on vessels registered under the laws of the United States where such vessels are available unless the necessity of the employee's mission requires the use of a vessel under a foreign flag.  Agencies may not pay for or reimburse for transportation expenses incurred on a foreign vessel without demonstrating a need to use a foreign vessel."); *see also* 14 FAM 616.2-1 ("Section 901(a) of the Merchant Marine Act of 1936 (46 U.S.C. 55302 and 55303) governs the use of U.S.-flag vessels for transporting household goods and/or personal effects and POVs of U.S. Government employees.").

**B.**      **The Federal Centralized Household Goods Traffic Management Program ("CHAMP")**

48.      The Department of State has 307 U.S embassies, consulates, and diplomatic missions around the world that require a shipping service for relocation of civilian executive branch employees' HHG and POVs. The shipping services often include moving services, home sale services, property management, and office relocation assistance. To assist federal agencies in relocating employees and transporting their personal and household goods between duty stations, GSA is in charge of administering the CHAMP program. The program operates using TSPs, which are qualified and credentialed American private shipping companies vetted by GSA that then may, in turn, subcontract with 3PLs to book and ship cargo via truck, rail, barge, or ocean carrier between duty stations. The TSPs must apply to GSA for approval to participate in the program.

49.      CHAMP is subdivided into two separate programs – Domestic and International. The Domestic program handles both interstate and intrastate shipments between locations in the

continental United States and Alaska. The International program covers shipments between the continental United States and locations elsewhere in the world, including Hawaii, Guam, Puerto Rico, the Virgin Islands, and foreign countries.

50.    Each program, Domestic and International, requires a separate application. GSA evaluates TSPs based on their financial stability, business experience, quality assurance, and knowledge of the Household Goods Tender of Service ("HTOS"), which is set forth by GSA and provides the rules and requirements for performing services as a provider in CHAMP.

51.    Each participating TSP must submit either a domestic or international application worksheet form. *See* https://www.gsa.gov/travel/agency-services/employee-relocation/household-goods-transportation/for-transportation-service-providers/approval-requirements. Included in this form is the HTOS Questionnaire, which asks about provisions in the HTOS. In order to attain GSA International Approval, a TSP must file and attest to the answers contained in the HTOS Tender of Service Questionnaire. If shipping internationally, a TSP will have to answer the International HTOS Questionnaire.

          1.    **Request for Offers ("RFOs") and the bidding process.**

52.    Every year, GSA issues a Request for Offers ("RFOs") to all TSPs approved to participate in CHAMP. The RFOs solicit rate proposals from TSPs for both domestic and international shipping lanes. During subsequent bidding periods, TSPs may submit offers to provide household goods transportation services to federal civilian agencies. The rate offers are restricted to the GSA-approved scope of operation (e.g., only TSPs approved to participate in the international program can propose rates for international shipping lanes).

53.    Certain federal civilian agencies, including DOS, have additional reporting and shipping requirements for the transportation of employees' household goods. These agencies

regularly work with GSA to promulgate Standing Route Orders ("SROs"), which outline the additional requirements. The SROs are then issued in conjunction with the annual RFO solicitation process. TSPs submitting offers for shipping lanes subject to SROs must abide by the requirements stated in both the RFO and SROs.

54.     Once a TSP has been federally approved for either international or domestic shipments by GSA to participate in CHAMP, the participating TSPs selected take full responsibility and agree to all federal rules and requirements outlined in the HTOS guidelines, including flowing down program requirements to subcontractors.

55.     Once the applicable bidding period closes, GSA evaluates the various rate offers, or bids, for each shipping lane and awards contracts to TSPs with the most competitive offers. TSP rate offers are evaluated and selected according to GSA's Value Index ("VI") system, which assesses offers based on the TSP's prior service performance, as well the attractiveness of its proposed rates. To calculate prior service performance, GSA employs a Customer Satisfaction Index ("CSI"), which, using data from the previous twelve-month period, measures employee and agency satisfaction with a given TSP's service in comparison to the average level of performance. If data is unavailable for a given TSP, that TSP will be considered unindexed and its prior service performance will not be a factor in the evaluation of its submitted rate offers.

56.     The TSP with the lowest applicable GSA tariff or tender on a given lane is awarded a single factor rate (SFR), the rate used in computing the accepted transportation for the award. The TSP's rate offer for the surface HHG is represented by a percentage as a single factor rate based on Base-Line Rates.

57.     After a TSP is selected, cargo can then be booked through the TSP. Once booked with a TSP, a TSP can either contract with a 3PL to find U.S.-flag vessel capacity or book with a U.S.-flag carrier directly.

58.     When a TSP contracts with a 3PL to carry CHAMP cargo, the U.S.-flag requirements flow-down and the subcontracting 3PL is subject to the same requirements to prefer U.S.-flagged vessels when booking carrier services.

### 2.     Certified waivers for using foreign flag vessels

59.     Among other RFO requirements, TSPs shipping goods internationally must use U.S.-flag vessels for the ocean portion of overseas shipments. If a U.S.-flag vessel is not available to provide the required service, TSPs can request permission to use foreign-flag vessels prior to shipment. To request permission, a TSP must submit to DOS a "Request for Approval of Use of a Foreign Flag Vessel." It also must certify in writing that US-flag shipping is not available or that the use of the foreign-flag shipping is necessary to meet delivery requirements.

60.     The use of U.S.-flag vessels is more expensive than the use of foreign-flag vessels because of required compliance with U.S. sanctions and other U.S. Government regulatory and legal requirements. As a result, TSPs applying for waiver of the U.S.-flag vessel requirement must also submit supporting documentation of any changes in the original proposed rate due to the use of foreign-flag shipping.

61. A TSP is responsible for requesting a waiver by submitting to DOS a certification attesting to the unavailability of a U.S.-flag vessel. The following are examples of the waivers:

***Determination of Non-US Flag Availability (DNA)***

***This determination of non-US flag availability authorizes the use of foreign flag services to transport shipments due to reasons stated below.***

| *Shipment Number* | *Customer Name* | *Company* | *Pack Date* |
|---|---|---|---|
| DC12345678 | Heather dodd | ABCD | 12/25/2019 |

| *Departure Airport/Port* | *Airline/Vessel:* | *Arrival Airport/Port* |
|---|---|---|
| Baltimore | bon voyage 123 | Florida |

| *Departure Date* | *Arrival Date* | *RDD* | *Approved* | *Denied* |
|---|---|---|---|---|
| 12/31/2019 | 1/5/2020 | 1/6/2020 | ☑ | ☐ |

***This DNA request was adjudicated based on the guidelines of the Tender of Service/Contract that governs the shipment IAW Maritime Administration (MARAD) United States-Flag (U.S.-Flag) vessel requirements. Approval does not allow for an increase in filed rates. All documentation must be sent to TTMCONTRACTS@STATE.GOV.***

***References:***
***The Merchant Marine Act of 1936 (46 U.S.C. 55302 and 46 U.S.C. 55303)***
***The Cargo Preference Act of 1954 (46 USC 55305)***
***Preference for Privately Owned U.S.-Flag Commercial Vessels (FAR 52.247-64)***
***Ocean Transportation by U.S.-Flag Vessels (48 CFR Subpart 47.5)***
***Cargo Preference - U.S.-Flag Vessels (46 CFR Part 381)***
***Overview of Civilian Agencies and Cargo Preference, Maritime Administration website***

*eSignature:* Heather Dodd

*DateSigned:* 12/27/2019 12:24:07 PM





62.    In the event of an increase or decrease in original rates awarded following the booking of ocean carrier transportation, a TSP is required to submit documentation of the difference in rates between the foreign-vessel rate and the rate originally awarded.

63.    In furtherance of the fraudulent scheme, upon information and belief, the TSP Defendants did not submit documentation of the differences in rates between foreign-flag vessels actually booked rates originally awarded.   Instead, TSP and 3PL Defendants retained the overcharge.

### 3.    U.S. General Services Administration's Household Goods Tender of Services ("HTOS")

64.    Pursuant to the statutes above, GSA oversees and sets forth the governing guidelines and regulations TSPs are subject to as CHAMP participants. GSA sets forth these

guidelines pursuant to the U.S. General Services Administration's Household Goods Tender of Service ("HTOS").

65.     The HTOS provides that all participants in the program agree to be bound by the HTOS terms and conditions. (*See* HTOS, Aug. 2010 Ed.)

The HTOS further provides,

> [t]he TSP shall use vessels of United States registry for the ocean portion of overseas shipments and book shipments for container or below deck stowage. However, when it is determined that the use of a vessel of United States registry will not provide the required service, the TSP shall request permission to use a Foreign Flag vessel prior to start of shipment.
>
> Requests for permission to use a Foreign Flag vessel shall be made to RTO on the form 'Request for Approval of Use of a Foreign Flag Vessel' (see Appendix C). Approval will be granted only when the TSP *certifies in writing that US flag shipping is not available or the use of foreign flag shipping is necessary* to meet delivery requirements.

HTOS, Aug. 2010 Ed. (emphasis added).

66.     The HTOS provides detailed rate information relating to foreign flag vessels:

> Adjustments in rates will be permitted when rate differentials are involved due to the use of Foreign Flag Shipping. A Justification Certificate (see Appendix C) is required for the use of a Foreign Flag vessel. When increases or decreases occur in rates due to the use of Foreign Flag Shipping, billing and documentation submitted in connection with the GBL shipment will have differences between the Foreign Flag vessel rate and the rate used in computing the accepted transportation single factor rate (SFR). The ocean freight bill which must be submitted to support each GBL and the rate will be adjusted in favor of the TSP or the Government on the basis of this bill.
>
> An example of the adjustment required in the event of an ocean rate increase would be:
>
> International GBL Shipment Adjustment Example
>
> SHIPMENT: 3,000 lb, 450 cu ft., Single Factor Rate = $32.00 per cwt
>
> STEP 1. Original Charges Due: 3,000 lb x $32.00 per cwt = $960.00
>
> STEP 2. Ocean rate used in constructing the effective GBL rate: 81 cents per cu ft

STEP 3. Paid to Foreign Flag Ocean TSP as stated on the ocean freight bill and computed in accordance with the measurement rule stated in tariff governing the rate: 90 cents per cu ft (9 cents per cu ft difference)

STEP 4. Supplemental charge for ocean freight 450 cu ft at 9 cents per cubic foot = $40.50.

STEP 5. Total charges due TSP: $960.00 + $40.50 = $1,000.50

*Id.* at § 8.3.

67.     The International HTOS Questionnaire that all aspiring TSPs must complete which reemphasizes the importance of these requirements, asks the following questions:

33.     When determined that the use of a vessel of the United States registry will not provide the required service, the participant will request permission to use foreign flag vessel prior to start of movement. (TRUE)

100.     Adjustments in rates will not be permitted when rate differentials are involved due to the use of Foreign Flag Shipping. (FALSE)[1]

*See* International HTOS Questionnaire, HHG International Application at https://www.gsa.gov/travel/agency-services/employee-relocation/household-goods-transportation/for-transportation-service-providers/approval-requirements.)

### 4.     Penalties

68.     Also demonstrating the importance and materiality of these requirements, in addition to the Federal False Claims Act, there are significant penalties for submitting false statements in conjunction with TSP services. "An applicant shall submit an application in its own name for approval as a TSP. A firm that on its own behalf or on behalf of an agent (a) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (b) makes any false, fictitious or fraudulent statement or representation; or (c) makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry on any part of

---

[1] *See* paragraph 82 for the regulatory requirement to equitably adjust rates following booking on a foreign-flag carrier pursuant to a DNA waiver.

the application or on any document furnished pursuant to this HTOS is punishable by fines, imprisonment, or both." 18 U.S.C. § 1001; *see also* HTOS, Aug. 2010 Ed. § 2.7.

## V.      OVERVIEW OF THE SCHEME

69.      It is estimated that DOS arranges over 18,000 international shipments of employee HHG and POVs each year. Defendant TSP shipping companies have systematically violated the America-First requirements by carrying out a three-part scheme: First they submit artificially low bids in order to knock out the competition and secure the shipping routes, or lanes.

70.      Second, having been aware all along that the bids they use to secure the lanes are too low to cover U.S.-flag vessel fees, once they are asked to complete a shipment, they contact 3PL Defendants who falsely inform TSP Defendants that there are no U.S.-flag vessels available. Defendant TSPs then falsely certify that no U.S-flag vessel can complete the shipment in order to use the much cheaper foreign-flag vessels.

71.      Third, after submitting false foreign-flag waivers and using lower-cost foreign-flag carriers, upon information and belief, TSP Defendants, enabled by 3PL Defendants, have failed to equitably adjust the amounts charged to the U.S. Government and instead have retained the overcharges.

72.      Defendants have capitalized on the fact that DOS historically did not have the resources to audit CHAMP bid submissions. In doing so, companies, such as Defendants, are estimated to have siphoned millions from taxpayers, which they unlawfully gave to foreign shipping vessels and profits that they pocketed over the past 10 years—taxpayer money that should have gone to U.S. flag vessel carriers or back to the U.S. Government. Through this scheme, TSP and 3PL Defendants diverted approximately 60% of the relevant cargo from U.S.-flagged vessels to foreign-flagged vessels and retained any overcharges thereon.

18

**A.    Part One of the Scheme: The submission of the low-ball bids.**

73.    As explained above, twice a year, TSPs can submit bids through the RFO process for an award of different shipping lanes (e.g., D.C. to China, Miami to the United Kingdom, etc.). DOS has 225 embassies and consulates worldwide, therefore, there are thousands of lanes at issue. One or more TSPs are awarded each lane. Once a lane award is secured through GSA, DOS managers arranging an employee move are required to use one of the TSPs that have been awarded the lane.

74.    The process is highly competitive and companies such as TSP Defendants submit low-ball bids to capture the lane awards. Upon information and belief, the rates submitted by TSP Defendants are so low they could only be cost-effective if they intend to unlawfully use cheaper foreign-flag cargo vessels. TSP Defendants have no intention of using the more expensive American carriers, knowing DOS will not audit the submissions. TSP Defendants, through the rigged bids, are awarded the most lucrative lanes and lock out law-abiding competition.

**B.    Part Two of the Scheme: Submission of fraudulent flag waivers.**

75.    In order to profit on the low-ball bids, TSP Defendants needed to falsely certify the need to use foreign carriers, which are much cheaper, by submitting the required waiver form to DOS. Pursuant to the laws cited above, and the GSA contract, each TSP certifies that the waiver request is accurate and truthful as submitted.

76.    The guidelines and GSA contract make clear that foreign-flag vessels are meant to be the rare exception to the rule requiring U.S. flag vessels. "Approval will be granted only when the TSP certifies in writing that a U.S. flag carrier is unavailable or the use of foreign flag shipping is necessary to meet delivery requirements."

77. TSP Defendants relied on DOS's inability to audit these waivers so they could continue to use cheaper foreign vessels and secure lanes with low-ball bids. They, in conjunction with 3PL Defendants, knowingly submitted thousands of fraudulent waivers claiming U.S.-flag vessels were not available, when in fact they were. As a result, law-abiding TSPs and 3PLs have been locked out of shipping lanes and have been unable to compete with these companies' unscrupulous practices.

### C. Part Three of Scheme: Retention of Overcharges.

78. Under CHAMP, unless the DOS determined the necessity of the mission required the use of a foreign-flag vessel, defendants were required to use 100% U.S.-flag vessels for the transportation of household goods by sea. 46 U.S.C. § 55302(a) ("An officer or employee of the United States Government traveling by sea on official business overseas or to or from a territory or possession of the United States shall travel and transport personal effects on a vessel documented under the laws of the United Sates if such a vessel is available, unless the necessity of the mission requires the use of a foreign vessel."); GSA Employee Relocation Resource Center, *Centralized Household Goods Traffic Management Program (CHAMP) 2021 Rate Filing Documents* at 2-8 ("U.S. laws also require 100% use of U.S.-Flag vessels for personal property when transportation is conducted by sea. Specifically, the transportation of government-financed civilian and military Household Goods HHGs and POVs by sea are covered under 46 U.S. Code § 55302 and 46 U.S. Code § 55303, respectively.").

79. TSP Defendants were specifically required to all U.S.-flag (Priority 1 or "P1" service) from the port of loading to the port of discharge whenever available, and were only permitted to use a combination of U.S.-flag and foreign-flag service (Priority 2 or "P2" service) when P1 service was unavailable. GSA Employee Relocation Resource Center, *CHAMP 2021 Rate Filing Documents* at 5.3.1 ("Priority 2 (P2- combination U.S.-Flag and non-U.S. flag) U.S.

Flag service must be used only when Priority 1 (P1) U.S. Flag service is not available.") available at https://www.gsa.gov/cdnstatic/2021%20Extended%20Storage%20Package%20Accessible.pdf; 14 FAM 616.1(a)(2) ("When neither U.S.-flag nor foreign-flag vessels exclusively operate directly between a port serving the place where transportation of effects originates and the port serving the actual destination, and it can be determined that a U.S.-flag vessel is available for any segment of the journey, the shipment must be routed on a U.S.-flag vessel on the segment operated by the U.S.-flag vessel.").

80.     All foreign-flag service (Priority 3 or "P3") was only permitted when DOS determined that the necessity of the agency's mission required the use of a foreign-flag vessel and the defendant TSP submitted a Determination of Non-Availability request to MARAD. GSA Employee Relocation Resource Center, *CHAMP 2021 Rate Filing Documents* at 5.3.1 ("After an agency or its designated agent has conducted and documented a thorough market survey of vessels listed under U.S. registry, and the designated agency official has concluded that the necessity of the agency's mission requires the use of a non-U.S. Flag vessel instead of a U.S. Flag vessel, the TSP must submit a completed Determination of Non-Availability (DNA) request to the Maritime Administration (MARAD), with the agency copied, no later than two weeks from the sailing date or ocean carrier acceptance, whichever comes first, requesting approval to ship the subject cargo on a non-U.S. Flag vessel.").

81.     Because 46 U.S.C. §§ 55302-303 requires government employee HHG and POVs to be transported exclusively on U.S.-flag vessels, contracts issued pursuant to CHAMP incorporate Federal Acquisition Regulation ("FAR") clause 52.247-64, Alternate I (Preference for Privately Owned U.S.-Flag Commercial Vessels). FAR 47.507(a)(2) ("If an applicable statute

requires… that the supplies to be furnished under the contracts must be transported exclusively in privately owned U.S.-flag commercial vessels… use [FAR 52.247-64] with its Alternate I.")

82.     Under FAR 52.247-64, Alternate I, TSP Defendants were required to inform the Government if U.S.-flag vessels were not available and request (1) authorization to ship in foreign-flag vessels or (2) designation of available U.S.-flag vessels.  If TSP Defendants were authorized to use foreign-flag vessels then their contracts were also required to be equitably adjusted to reflect the difference (i.e., cost saving to the defendants) between the applicable U.S.-flag rate and foreign-flag rate. FAR 52.247-64(b), Alternate I ("If the Contractor is authorized in writing by the Contracting Officer to ship the supplies in foreign-flag vessels, the contract price shall be equitably adjusted to reflect the difference in costs of shipping the supplies in privately owned U.S.-flag commercial vessels and in foreign-flag vessels."). Here, where foreign-flag vessels were used to ship HHG and POVs in lieu of U.S.-flag vessels, the rate should have been adjusted down so that the U.S. Government would have paid less for the shipment costs.

83.     Upon information and belief, TSP Defendants, as enabled by 3PL Defendants, did not conduct this rate adjustment and instead retained the overcharges.

**D.      The Details of this Scheme Were Openly Known and Carried Out Together By TSP and 3PL Defendants**

84.     Upon information and belief, TSP and 3PL Defendants communicated, agreed, and conspired among each other that TSPs would prepare and submit knowingly false and fraudulent DNA waivers for approval and 3PLs would ship under those fraudulent DNAs, knowing them to be false and fraudulent.

85.     Upon information and belief, the details of this scheme to defraud the U.S. Government were known by Defendants. For example, in October 2018, an employee of a 3PL Defendant emailed an employee of Relator asking if Relator had any leeway on rates because

22

several TSPs were quoting and booking U.S. DOS cargo at foreign-flag rates and on foreign-flag vessels. In other words, the 3PL employee acknowledged that TSPs in the industry were quoting and booking U.S. Government cargo at foreign-flag rates and on foreign-flag vessels despite Relator having U.S.-flag trade lane availability, thereby violating America-first requirements, and sought to execute the same scheme by obtaining reduced rates by booking CHAMP HHG and POVs on foreign-flag carriers.

**[INTENTIONALLY LEFT BLANK]**

23

**E.**   **Despite the Requirement to Utilize and the Availability of U.S.-Flagged Carrier Capacity, TSP and 3PL Defendants Shipped Enormous Volumes of Relevant Cargo on Foreign-Flagged Carriers.**

86.     TSP Defendant Accelerated shipped relevant cargo on a foreign-flag vessel in February 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Accelerated knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Accelerated submitted a DNA request on February 1, 2018:

Page 470 of 931

### Determination of Non-US Flag Availability (DNA)

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC18292327 | (b)(6) | | AIFD | 2/2/2018 |

| Departure Airport/Port | Airline/Vessel: | | | Arrival Airport/Port |
|---|---|---|---|---|
| BLT | MSC KWANGYANG/806 | | | CAS |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 2/14/2018 | 3/7/2018 | 4/2/2018 | ✔ | — |

Comments:
NO US FLAG VESSEL TO MEET RDD

eSignature:  (b)(6)

DateSigned:   2/1/2018 2:53:42 PM

24

87.     TSP Defendant Accelerated submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

88.     TSP Defendant Ace shipped relevant cargo on a foreign-flag vessel in April 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Ace knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Ace submitted a DNA request on March 6, 2018:

Page 422 of 931

### Determination of Non-US Flag Availability (DNA)

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | Company | Pack Date |
|---|---|---|---|
| DC18285240 | (b)(6) | ARCA | 2/8/2018 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| BALTIMORE | MSC TORONTO / 809E | DJIBOUTI |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 3/7/2018 | 4/14/2018 | 4/24/2018 | ✔ | -- |

Comments:
THERE IS NO DIRECT US FLAG SERVICE FROM BALTIMORE TO DJIBOUTI

eSignature: (b)(6)
DateSigned:   3/6/2018 6:21:58 AM

25

89.     TSP Defendant Ace submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

90.     TSP Defendant Allied shipped relevant cargo on a foreign-flag vessel in August 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Allied knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Allied submitted a DNA request on August 9, 2018:

FL-2021-00012   A-00000420625      UNCLASSIFIED   8/2/2021   Page 1122
**Page 2332 of 3899**

### Determination of Non-US Flag Availability (DNA)

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC18116928 | | (b)(6) | AVLH | 7/26/2018 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| Baltimore, MD | MSC Maureen v834E | Tema, Ghana |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 8/22/2018 | 9/26/2018 | 10/9/2018 | ✔ | |

**Comments:**
American Flag Service is unavailable for this traffic lane

*eSignature:*  (b)(6)
*DateSigned:*  8/9/2018 1:42:18 PM

26

91.     TSP Defendant Allied submitted this DNA despite the availability of a weekly

U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag

requirements for CHAMP cargo.

92.     TSP Defendant Champion shipped relevant cargo on a foreign-flag vessel in July

2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme,

Champion knowingly submitted and secured approval of a false and fraudulent DNA and shipped

the cargo thereunder. Specifically, Champion submitted a DNA request on July 25, 2018:

FL-2021-00042   A-00000420656   TRNSI AGREEMENT   8/24/2021   Page 552

**Page 3082 of 3899**

*Determination of Non-US Flag Availability (DNA)*

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC18726190 | | (b)(6) | CHMP | 7/17/2018 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| New York, NY | Vanguard/ Dalian Express/ | Dubai, UAE |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 8/13/2018 | 9/13/2018 | 9/17/2018 | ✓ | — |

*Comments:*
This is the earliest available option to possibly meet the RDD.

eSignature:   (b)(6)

DateSigned:   7/25/2018 1:38:00 PM

93.     TSP Defendant Champion submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

94.     TSP Defendant Effort shipped relevant cargo on a foreign-flag vessel in October 2019 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Effort knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Effort submitted a DNA request on October 7, 2019:

FL-2021-00042   A-00000420762   "UNCLASSIFIED"   10.5.2021
**Page 194 of 2665**

### Determination of Non-US Flag Availability (DNA)

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC19048433 | (b)(6) | | ATYE | 9/18/2019 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| New York, NY | Vanguard (ONE) / YM Ess | Dakar, Senegal |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 10/19/2019 | 11/14/2019 | 12/2/2019 | ✔ | |

*Comments:*
There is currently no U.S. Flag LCL service available to Dakar to meet the RDD.
Vanguard offers the most direct foreign flag service available.

*eSignature:*   (b)(6)
*DateSigned:*   10/7/2019 9:48:05 AM

95.     TSP Defendant Effort submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

96.     TSP Defendant Gridiron shipped relevant cargo on a foreign-flag vessel in November 2018 and October 2019 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Gridiron knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Gridiron submitted a DNA request on August 29, 2019:

FL-2021-00042   A-00000420706   "UNCLASSIFIED"   10/5/2021
**Page 716 of 2665**

*Determination of Non-US Flag Availability (DNA)*

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC19076856 | | (b)(6) | GRIN | 8/23/2019 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| Houston, TX | MSC Maeva V935R | Abu Dhabi |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 9/9/2019 | 10/10/2019 | 10/24/2019 | ✓ | |

*Comments:*
There is no US Flag P1 service from Houston TX to Abu Dhabi, UAE. Available P2 service from Hapag is from Houston to Antwerp to Jebel Ali to Abu Dhabi and is much longer (approx 56 days). With this longer transit we are not confident that of meeting the RDD as there exists a possibility of delays and missed connection at transshipment port. Foreign Flag service on MSC has a transit of 31 days direct without any transshipment from Houston to Abu Dhabi. Requesting use of foreign flag with shorter transit to meet mission requirements and RDD.

*eSignature:*   (b)(6)
*DateSigned:*   8/29/2019 2:52:02 PM

97. TSP Defendant Gridiron submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

98. TSP Defendant Stevens shipped relevant cargo on a foreign-flag vessel in August 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Stevens knowingly submitted and secured approval of a false and fraudulent DNA and shipped the cargo thereunder. Specifically, Stevens submitted a DNA request on August 23, 2018:

FL-2021-00042   A-00004296814   UNCLASSIFIED   3/24/2021  Page 1431

**Page 2020 of 3899**

### Determination of Non-US Flag Availability (DNA)

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC18812077 | | (b)(6) | STVF | 8/1/2018 |

| Departure Airport/Port | Airline/Vessel: | Arrival Airport/Port |
|---|---|---|
| Savannah GA | COSCO EVER LUCKY/02 | Ashdod |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 8/25/2018 | 9/29/2018 | 10/1/2018 | ✓ | -- |

*Comments:*
US flag vessel Philadelphia Express 056E cut off is 08/17 with an ETA 10/09. Will miss the RDD.

*eSignature:* (b)(6)

*DateSigned:* 8/23/2018 3:26:22 PM

30

99.     TSP Defendant Stevens submitted this DNA despite the availability of a weekly

U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag

requirements for CHAMP cargo.

100.    TSP Defendant Suddath shipped relevant cargo on a foreign-flag vessel in August

2018 and October-November 2018 despite the availability of U.S.-flag capacity. In furtherance of

the fraudulent scheme, Suddaath knowingly submitted and secured approval of a false and

fraudulent DNA and shipped the cargo thereunder. Specifically, Suddath submitted a DNA request

on October 11, 2018:

FL-2021-00042   A-00000100038   UNCLASSIFIED   10/5/2021

**Page 1319 of 1461**

*Determination of Non-US Flag Availability (DNA)*

*This determination of non-US flag availability provides a ruling on the use of foreign flag services to transport shipments due to reasons stated below.*

| Shipment Number | Customer Name | | Company | Pack Date |
|---|---|---|---|---|
| DC18951334 | (b)(6) | | SDHR | 10/8/2018 |

| Departure Airport/Port | Airline/Vessel: | | Arrival Airport/Port |
|---|---|---|---|
| New York | MOL PARTNER 108W | | Abu Dhabi |

| Departure Date | Arrival Date | RDD | Approved | Denied |
|---|---|---|---|---|
| 10/23/2018 | 11/29/2018 | 12/13/2018 | ✓ | -- |

*Comments:*
This vessel provides the most direct sailing with the shortest transit time, in respect for the RDD.

*eSignature:*   (b)(6)

*DateSigned:*   10/11/2018 1:29:33 PM

101.     TSP Defendant Suddath submitted this DNA despite the availability of a weekly U.S.-flag service aboard Maersk Line, Ltd. which would have complied with U.S.-flag requirements for CHAMP cargo.

102.     3PL Defendant Atlas shipped relevant cargo on a foreign-flag vessel in September 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Atlas knowingly shipped relevant cargo under a false and fraudulent DNA.

103.     3PL Defendant Carotrans shipped relevant cargo on a foreign-flag vessel in September 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Carotrans knowingly shipped relevant cargo under a false and fraudulent DNA.

104.     TSP Defendant Continental shipped relevant cargo on a foreign-flag vessel in September 2017 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Continental knowingly shipped relevant cargo under a false and fraudulent DNA.

105.     3PL Defendant Econocaribe shipped relevant cargo on a foreign-flag vessel in October 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Econocaribe knowingly shipped relevant cargo under a false and fraudulent DNA.

106.     3PL Defendant M&S Logistics shipped relevant cargo on a foreign-flag vessel in September 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, M&S Logistics knowingly shipped relevant cargo under a false and fraudulent DNA.

107.     3PL Defendant OL USA shipped relevant cargo on a foreign-flag vessel in February 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, OL USA knowingly shipped relevant cargo under a false and fraudulent DNA.

108.     3PL Defendant Rose Container shipped relevant cargo on a foreign-flag vessel in March 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Rose Container knowingly shipped relevant cargo under a false and fraudulent DNA.

109.     3PL Defendant Sea Express shipped relevant cargo on a foreign-flag vessel in March 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Sea Express knowingly shipped relevant cargo under a false and fraudulent DNA.

110.     3PL Defendant Sea Shipping shipped relevant cargo on a foreign-flag vessel in December 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Sea Shipping knowingly shipped relevant cargo under a false and fraudulent DNA.

111.     3PL Defendant See-Sped shipped relevant cargo on a foreign-flag vessel in October 2019 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, See-Sped knowingly shipped relevant cargo under a false and fraudulent DNA.

112.     3PL Defendant Shipco shipped relevant cargo on a foreign-flag vessel in August 2021 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Shipco knowingly shipped relevant cargo under a false and fraudulent DNA.

113.     3PL Defendant Vanguard shipped relevant cargo on a foreign-flag vessel in February 2020 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, Vanguard knowingly shipped relevant cargo under a false and fraudulent DNA.

114.     3PL Defendant XPT shipped relevant cargo on a foreign-flag vessel in October 2018 despite the availability of U.S.-flag capacity. In furtherance of the fraudulent scheme, XPT knowingly shipped relevant cargo under a false and fraudulent DNA.

**F.     Further evidence shows that Defendants have continued the scheme to present day.**

115.    In 2018, Relator and others began raising concerns about the fraudulent practices. As a result, DOS began reemphasizing the U.S.-flag requirements during industry conferences and through DOS publications. On March 27, 2019, DOS held a mandatory TSP meeting. Emanuel (Manny) Hazel was introduced as the Manager of Foreign Flag Waivers, a newly created position amidst the crackdown to show DOS's recognition of the flagrant abuse of the CHAMP program through submission of fraudulent bids and waivers.

116.    Despite Relator's and DOS's efforts, a high portion of CHAMP cargo continues to move on foreign-flag vessels. Specifically, in 2017 55.1% of CHAMP cargo moved on foreign-flag vessels, 62.3% moved on foreign-flag vessels in 2018, 53.3% moved on foreign-flag vessels in 2019, 63.8% moved on foreign-flag vessels in 2020,[2] and 56.3% moved on foreign-flag vessels in 2021.

## VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION
ON BEHALF OF THE UNITED STATES
VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT
PRESENTING FALSE CLAIMS,
AGAINST ALL DEFENDANTS
(31 U.S.C. § 3729(a)(1)(A))**

117.    Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

118.    Defendants knowingly caused to be presented false claims for payment or approval to an officer or employee of the United States.

---

[2] 2020 volumes are anomalously low due to COVID-19 related restrictions. Nevertheless, a significant portion of CHAMP cargo moved on foreign-flagged vessels.

119.    Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents to, and through the CHAMP program, administered and overseen by GSA and DOS for the benefit of civilian employees and affiliates of the United States government working for DOS.

120.    Defendants violated federal laws, regulations and guidelines requiring the use of U.S.-flag vessels, and the requirement that TSPs submit accurate bids as well as truthful certification that U.S-flag vessels were not available in certain circumstances. Defendants falsely submitted their need for using foreign-flag vessels for their own profit and gain in violation of the Merchant Marine Act of 1936, The Cargo Preference Act of 1954 and the corresponding regulations to these Acts, the U.S. General Services Administration's Household Goods Tender of Services guidelines, applicable to all TSP contracts, and the GSA contracts Defendants agreed to enter into for the benefit of the United States government.

121.    Defendants knowingly submitted false bids and certifications in order to obtain lane awards and increase their profits.

122.    Defendants knowingly made, used, and caused to be made and used false certifications that their claims, and all documents and data upon which those claims were based, were accurate, and were supplied in full compliance with all applicable statutes and regulations.

123.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

**SECOND CAUSE OF ACTION**
**ON BEHALF OF THE UNITED STATES**
**VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT**
**MAKING OR USING FALSE RECORDS OR STATEMENTS**
**MATERIAL TO PAYMENT OR APPROVAL OF FALSE CLAIMS,**
**AGAINST ALL DEFENDANTS**
**(31 U.S.C. § 3729(a)(1)(B))**

124.    Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

125.    Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used false records or statements material to false or fraudulent claims. Defendants knowingly violated laws, regulations and guidelines which require use of U.S.-flag vessels, absent certain unique circumstances, as a condition and part of each GSA contract entered into to participate in the CHAMP program. Defendants knowingly submitted to the United States government, through GSA and DOS, inaccurate low-ball bids and fraudulent certifications relating to the alleged need to use foreign flag vessels in order to obtain lane awards.

126.    Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to contractual bids for shipping lane awards, waivers, and supporting documents to, and through the CHAMP program, administered and overseen by GSA and DOS for the benefit of civilian employees and affiliates of the United States government working for DOS.

127.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

**THIRD CAUSE OF ACTION**
**ON BEHALF OF THE UNITED STATES**
**CONSPIRACY**
**(31 U.S.C. § 3729(a)(1)(C))**

128.     Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

129.     Beginning in at least 2008 and running through the present, TSP Defendants and 3PL Defendants agreed between and among themselves to employ a scheme to falsely overbill the U.S. Government for foreign-flag cargo capacity.

130.     As set forth above, the TSP Defendants and 3PL Defendants knew of and participated in this scheme by knowingly submitting low-ball bids and false DNAs indicating that U.S.-flagged vessels were unavailable. TSP Defendants and 3PL Defendants knowingly accepted compensation based on the inflated foreign-flag rates and did not equitably adjust the government-paid rates to reflect the rate differential as required by FAR 52.247-64.

131.     Defendants concerted actions violated 46 U.S.C. § 55302(b) *et seq.*, and resulted in in knowing false submission to the United States.

132.     Defendants conspired to defraud the United States Government to get a false claim allowed or paid in violation of 31 U.S.C. § 3729(a)(1)(C).

133.     Defendants are jointly and severally liable for the total amount of the conspiracy to defraud the U.S. government.


**VII.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States of America, by and through Relator, prays for relief against Defendants as follows:

Pursuant to the False Claims Act:

TO THE UNITED STATES OF AMERICA AND QUI TAM PLAINTIFF:

1. For civil penalties of up to the maximum statutory amount permitted to be imposed for each and every false and fraudulent claim from 2008-present for award and payment of shipping lane contracts through the Centralized Household Goods Traffic Management Program presented, or caused to be presented, submitted and certified to the United States General Services Administration and Department of State;

2. For treble damages resulting to the United States Department of State based on the conduct of Defendants;

3. For pre- and post-judgment interest;

4. For reasonable attorneys' fees, costs, and expenses incurred in bringing this case; and

5. That *Qui Tam* Plaintiff be awarded the maximum percentage of recovery allowed pursuant to the False Claims Act.

## VIII.  DEMAND FOR JURY TRIAL

Relators hereby demand a jury trial on all issues so triable.

Dated: November 5, 2021

Respectfully Submitted,

Arielle S. Eisenberg (FL Bar. No. 0111467)
COZEN O'CONNOR
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (786) 871-3953
Facsimile: (786) 220-0472
Email: aeisenberg@cozen.com

Nicole H. Sprinzen (*pro hac vice* forthcoming)
Thomas J. Ingalls (*pro hac vice* forthcoming)
COZEN O'CONNOR
1200 19th Street NW, Suite 300
Washington, DC 20036
Telephone: (202) 471-3451
Facsimile: (202) 499-2941
Email: nsprinzen@cozen.com
Email: tingalls@cozen.com